UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| COZY BLACK, JR., | ) |  |
|---|---|---|
| Movant, | ) |  |
| vs. | ) | No. 4:07CV443 HEA |
| UNITED STATES OF AMERICA, | ) |  |
| Respondent. | ) |  |

# OPINION, MEMORANDUM AND ORDER

This matter is before the Court on movant's Motion under 28 U.S.C. § 2255 by a Person in Federal Custody to Vacate, Set Aside or Correct Sentence, [Doc. 1]. The government has responded to the motion. Movant has presented several grounds upon which he relies for relief. As set forth below, Movant has failed to establish that he is entitled to have his sentence vacated, set aside or corrected. The Motion, is therefore DENIED without a hearing.

## Facts and Background

Movant was indicted on a one count Indictment on January 27, 2005, charging him with possessing: a firearm by a previously convicted felon in violation of 18 U.S.C. § 922(g)(1).

On July 11, 2005, Movant pled guilty pursuant to a written plea agreement to the charge of felon in possession of a firearm. In the plea agreement, the parties

agreed that they acknowledge that the following specific offense characteristic of Section 2K2.1(b)(4) [of the Sentencing Guidelines] may apply" and that two levels may be added as the firearm may have been stolen.  They also agreed that Section 2K2.1(b)(5) or 2K2.1(c) may apply as the Movant "possessed the firearm in connection with the commission of the felony offense of Assault 1st Degree when he shot at individuals in retaliation."  Furthermore, as part of the stipulation, the parties agreed to the following set of facts:

> On May 17, 2005 members of the St. Louis Metropolitan Police Department were on routine patrol in the area of Gravis Park in the
City of St. Louis within the Eastern District of Missouri.  As officers were sitting in an unmarked vehicle observing a group of individuals milling doubt the park they observed the Defendant walk past the detectives [sic] vehicle and pull a firearm from underneath his t-shirt from the front portion of his waistband.  The officers observed the Defendant start to run toward a group of individuals in the park, aim the revolver at them and shoot four times at them.  The officers approached the Defendant ordered him to drop his weapon and get on the ground.  He did so and was placed under arrest.  When questioned the Defendant informed the police that the shooting was gang related.  He told the police of an ongoing feud between rival gangs.
>
> A further interview with another victim by the name of Robinson, revealed that she and her baby were walking in the park when shots began to be fired and she hit the ground, as dirt was flying in the air since some of the rounds were hitting right near were she and her baby were lying. When interviewed the Defendant told the detectives that he was angry at the group of subjects that he shot at because they shot at his "home" (street terminology for friend).  He saw the woman with her child next to the group, however, he was so mad at the group of subjects that he was shooting at that he did not care about them.  He acknowledged he was going to be going to jail for this but it was just

going to be for a brief period of time and when he got out he would continue to be "Minno" for life. Minno is the name of the street gang to which the Defendant admitted being affiliated. His membership in the group was the reason for the feud.

The gun was taken to the St. Louis Police Lab and found to be a Taurus .357 magnum revolver, bearing serial number 5141778, which was not manufactured in the State of Missouri, therefore, it had traveled in interstate commerce prior to being in the Defendant's possession. It was found to function as designed pursuant to the definition of a firearm in Title 18 Section 921. Upon his arrest the Defendant admitted he had possession of the firearm.

A review of his criminal history revealed that the Defendant was convicted of the felonies named in the indictment which were punishable by a term exceeding one year under the laws of the State of Missouri prior to his possession of the weapon.

A Pre-Sentence Investigation Report was prepared. On October 20, 2005, a hearing for the purpose of sentencing was held. Movant had filed objections to the Pre-Sentence Investigation Report, and the Court heard argument on the objections. Movant objected to the finding that 2K2.1(c)(1)(A) should be used, as the weapon was used in connection with an assault with intent to commit murder thereby invoking the cross-reference to 2K2.1(a)(2), which resulted in a base level of 27. Movant argued that the appropriate cross reference was 2A2.2, which is aggravated assault and would have resulted in a base level of either 14. Movant argued that his state conviction of Assault 1st Degree was not the equivalent of assault with intent to commit murder. Movant's objections were overruled. The Court found that no

matter the nomenclature, whether it is termed "assault 1st degree" or assault with intent to commit murder," the facts established that the stipulated facts justified the cross reference set forth in the Pre-Sentence Investigation Report. Movant was sentenced to 112 months imprisonment. Movant appealed his sentence. The appeal was dismissed by the Eighth Circuit Court of Appeals on January 16, 2006. Movant petitioned for a Writ of Certiorari, which was denied on October 2, 2006.

## **Standards for Relief Under 28 U.S.C. 2255**

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief from a sentence imposed against him on the ground that "the sentence was imposed in violation of the Constitution or law of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Claims based on a federal statute or rule, rather than on a specific constitutional guarantee, "can be raised on collateral review only if the alleged error constituted a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Reed v. Farley*, 512 U.S. 339, 354 (1994)(quoting *Hill v. United States*, 368 U.S. 424, 477 n. 10 (1962)).

The Court must hold an evidentiary hearing to consider claims in a § 2255 motion "unless the motion, files and records of the case conclusively show that the

prisoner is entitled to no relief." *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994)(citing 28 U.S.C. § 2255). Thus, a "[movant] is entitled to an evidentiary hearing 'when the facts alleged, if true, would entitle [movant] to relief.'" *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996)(quoting *Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir. 1986)). The Court may dismiss a claim "without an evidentiary hearing if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043.

It is well-established that a petitioner's ineffective assistance of counsel claim is properly raised under 28 U.S.C. § 2255 rather than on direct appeal. *United States v. Davis,* 452 F.3d 991, 994 (8th Cir.2006). The burden of demonstrating ineffective assistance of counsel is on a defendant. *United States v. Cronic,* 466 U.S. 648, 658 (1984); *United States v. White,* 341 F.3d 673, 678 (8th Cir.2003). To prevail on an ineffective assistance of counsel claim, a convicted defendant must first show counsel's performance "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The defendant must also establish prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*, at 694.

Both parts of the *Strickland* test must be met in order for an ineffective

assistance of counsel claim to succeed. *Anderson v. United States,* 393 F.3d 749, 753 (8th Cir.), *cert. denied,* --- U.S. ----, 126 S.Ct. 221 (2005). The first part of the test requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Review of counsel's performance by the court is "highly deferential," and the Court presumes "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* The court does not "second-guess" trial strategy or rely on the benefit of hindsight, *id.,* and the attorney's conduct must fall below an objective standard of reasonableness to be found ineffective, *United States v. Ledezma-Rodriguez,* 423 F.3d 830, 836 (2005). If the underlying claim (i.e., the alleged deficient performance) would have been rejected, counsel's performance is not deficient. *Carter v. Hopkins,* 92 F.3d 666, 671 (8th Cir.1996). Courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. *Id.*

The second part of the *Strickland* test requires that the movant show that he was prejudiced by counsel's error, and "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Anderson,* 393 F.3d at 753-54 (quoting *Strickland,* 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence

in the outcome." *Strickland,* 466 U.S. at 694. When determining if prejudice exists, the court "must consider the totality of the evidence before the judge or jury." *Id.* at 695; *Williams v. U.S.,* 452 F.3d 1009, 1012-13 (8th Cir. 2006).

The first prong of the *Strickland* test, that of attorney competence, is applied in the same manner to guilty pleas as it is to trial convictions. The prejudice prong, however, is different in the context of guilty pleas. Instead of merely showing that the result would be different, the defendant who has pled guilty must establish that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Matthews v. United States*, 114 F.3d 114.

Where a defendant raises multiple claims of ineffective assistance, each claim of ineffective assistance must be examined independently rather than collectively. *Hall v. Luebbers,296* F.3d 385, 692-693 (8th Cir.2002); *Griffin v. Delo,* 33 F.3d 895, 903-904 (8th Cir.1994).

### **Discussion**

When a defendant waives his appeal and post conviction relief rights in a plea agreement, the waiver will be enforced if it was knowingly and voluntarily made. *DeRoo v. United States,* 223 F.3d 919, 923 (8th Cir.2000) (citing *United States v. Goings,* 200 F.3d 539, 543 (8th Cir.2000)). However, where a movant is arguing in

his § 2255 motion that the plea and the waiver were not knowing and voluntary due to ineffective assistance of counsel, then the waiver does not bar the § 2255 claims. *Id.* at 924.

Plea bargaining does not violate the Constitution, even though a guilty plea waives important constitutional rights. *Newton v. Rumery,* 480 U.S. 386, 393, (1987). It is well-settled that a defendant may affirmatively waive particular constitutional rights. *See Boykin v. Alabama,* 395 U.S. 238, 243 (1969) (right to a jury trial, to confront and cross-examine witnesses, and to the Fifth Amendment privilege against self-incrimination); *Faretta v. California,* 422 U.S. 806 (1975) (right to counsel).

### **Ground One: Prosecutorial Misconduct**

In his first ground for relief, Movant argues that the prosecutor breached the plea agreement. Movant contends that the Government entered into a plea agreement with him to plead guilty to a felon in possession of a firearm, an offense which he claims to be at an offense level of 14 under the Sentencing Guidelines. Movant further argues that at sentencing, the Government argued for an "attempt murder" guideline instead of the Aggravated Assault guideline "agreed upon."

Movant's argument is misplaced. Nothing in the record establishes that the Government "agreed upon" an Aggravated Assault guideline. Rather, the record

clearly establishes that in the plea agreement the parties agreed that Section 2K2.1(c) may apply. Regardless of the terminology used in the State Court, as opposed to that used in the federal arena, the factual scenario which gave rise to Movant's felony conviction, supports application of 2K2.1(c)(1)(A) and the cross reference to 2A2.1(a)(2) was appropriate. There was no breach of the plea agreement.

### Ground Two: Involuntary Plea of Guilty

Movant's second ground for relief is that his plea was not voluntary because the Government failed to honor the agreement. The ground fails simply because the Government *did* honor the agreement, in accordance with all the terms set out in the agreement. Application of the possible guidelines were set forth in the plea agreement and Movant cannot now contend that his plea was involuntary because those possible guidelines were indeed applied.

### Ground Three: Incorrect Guideline Application

Movant again argues that the Court erred in the cross referencing the guidelines. Not only was this argument found to be unavailing, but Movant cannot properly raise it in this proceeding, as it is does not raise a constitutional ground for relief and movant has failed to demonstrate a fundamental defect resulting in a complete miscarriage of justice. Claims based on a federal statute or rule, rather

than on a specific constitutional guarantee, "can be raised on collateral review only if the alleged error constituted a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Reed,* 512 U.S. at 354. Movant's mere recitation that the Court erred in its cross referencing is insufficient to carry Movant's burden of establishing the required criteria.

### **Ground Four: Ineffective Assistance of Counsel**

Finally, Movant argues that counsel was ineffective for advising him to plead guilty to the felon in possession of a firearm charge with an offense level of 14. Movant's claim fails because the language of the plea agreement clearly sets forth that Movant could get up to ten years and possibly a mandatory minimum of fifteen years. Movant may be unhappy with the result, but he was keenly aware of the range of punishment at the time of the plea agreement. He acknowledged the possibilities and recognized that the sentence was entirely within the Court's decision. The Court's sentence was within the appropriate range and Movant may not now attempt to argue that he "thought" he would get a lesser amount of time in light of the specifically articulated terms outlined in the plea agreement and his agreement thereto. Movant cannot show any prejudice from what counsel may or may not have discussed with him regarding his sentence.

### **Conclusion**

Based upon the foregoing analysis, none of the grounds upon which movant relies entitles him to relief.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Vacate, Set aside or Correct Sentence, [Doc. 1], is DENIED.

**IT IS FURTHER ORDERED** that this Court will not issue a Certificate of Appealability as Movant has not made a substantial showing of the denial of a federal constitutional right.

Dated this 1st day of August, 2007.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE